Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JENNIFER WILMOTH,

　　　　　Plaintiff,

　　v.

ARPIN AMERICA MOVING SYSTEMS, LLC d/b/a ARPIN AMERICA NEW JERSEY, *et al.*,

　　　　　Defendants.

Civil Action No. 19-19187 (ES) (CLW)

OPINION

SALAS, DISTRICT JUDGE

Before the Court is the motion of defendants Relocation Express, LLC and Mario Silvestri ("Defendants") to dismiss plaintiff Jennifer Wilmoth's ("Plaintiff") amended complaint. (D.E. No. 13 ("Motion")). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367. Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court DENIES the Motion.

## I.　　BACKGROUND

This case arises from sexual harassment and sex-based discrimination that Plaintiff allegedly experienced throughout her employment. Plaintiff sues her employer, Relocation Express, as well as a number of additional entities,[1] and two individual defendants, John Cianflone (Vice President and General Manager of Relocation Express) and Mario Silvestri (President of

---

[1]　　In addition to Relocation Express, Plaintiff originally sued eight additional entities, claiming that they are joint employers of Plaintiff. (D.E. No. 1 ¶¶ 9–20). Five of those entities have since been terminated from this lawsuit. The three remaining entities include Arpin America Moving Systems, LLC (doing business as Arpin America New Jersey), Arpin Van Lines Inc., and Relocation Express - Arpin LLC. Defendants claim that Relocation Express - Arpin, LLC does not exist, and that the remaining Arpin entities have no relationship to Relocation Express. (D.E. No. 13-3 ("Mov. Br.") at 1 n.1). The pending motion was filed by Relocation Express and Mario Silvestri only.

Relocation Express).  (D.E. No. 9 ("Amended Complaint" or "Am. Compl.")  ¶¶ 1, 16 & 18–21).
The Court pulls the relevant facts from the Amended Complaint.

Relocation Express provides professional moving services in the Tri-State area.  (*Id.* ¶ 15).
Plaintiff was hired in October 2017 as the Operations Manager for a Relocation Express warehouse
located in Edison, New Jersey.  (*Id.* ¶ 23).  Plaintiff alleges that she reported to Cianflone, who
possessed "supervisory authority" over her and "control[led] many tangible aspects of Plaintiff's
job duties, including the power to hire and fire Plaintiff."  (*Id.* ¶ 19).  Plaintiff also alleges that
Silvestri "held supervisory authority over Plaintiff with regard to her employment, controlling
many tangible aspects of [her] job duties, including the power to hire and fire [her]."  (*Id.* ¶ 22).

Plaintiff alleges that Cianflone, her direct supervisor, subjected her to numerous instances
of both verbal and physical unwanted sexual advances.  (*Id.* ¶ 39).  The following is a non-
exhaustive list of Plaintiff's allegations about the harassment and discrimination she experienced:

- On a "daily basis" Cianflone "subjected Plaintiff to overbearing micromanagement and treated Plaintiff noticeably different from that of her male co-workers."  (*Id.* ¶ 26).
- Cianflone called Plaintiff demeaning pet names such as "dear" or "darling."  (*Id.* ¶ 28).
- Cianflone "asked Plaintiff her bra size and insisted that any woman working in the warehouse should be attractive."  (*Id.* ¶ 30).
- Cianflone "made sexual comments to Plaintiff about another woman's 'thigh gap.'"  (*Id.* ¶ 31).
- Cianflone intimated that Plaintiff engaged in sexual behavior with male employees in the warehouse, stating "I don't know what you're doing to the guys, but they all love you."  (*Id.* ¶ 34).
- Cianflone "handed Plaintiff a banana and stated, 'I want to watch you eat it.'"  (*Id.* ¶ 40).
- Cianflone made comments about Plaintiff's appearance, in one instance telling her that he found her "pleasantly plump."  (*Id.* ¶ 41).
- Cianflone claimed to be tracking Plaintiff's "blood cycle."  (*Id.* ¶ 42).

- Cianflone "groped Plaintiff's breasts during a routine walk-through of the warehouse." (*Id.* ¶ 47).

- In or around October 2018, Cianflone, as retaliation for Plaintiff opposing Cianflone's sexual advances, spoke to Silvestri about Plaintiff's work performance, demoted her from her position as Operations Manager, and replaced her with a male employee (James Essex). (*Id.* ¶¶ 52–57).

- On "numerous occasions," Cianflone "demanded that Plaintiff eat dinner with him." (*Id.* ¶¶ 48, 62 & 77). On one occasion, Plaintiff alleges that Cianflone tried to hug her and kissed her head. (*Id.* ¶ 48).

- On another occasion, Cianflone "demanded that Plaintiff join him for dinner to discuss Essex's performance." (*Id.* ¶ 62). At that dinner, Cianflone "professed his love for Plaintiff," informing her that his wife was ill, and he needed to find a replacement. (*Id.* ¶ 63). At that same dinner, Cianflone admitted he was in love with Plaintiff, that he thought about her 24/7, that he spent his days wondering who she was with and that he "watche[d] Plaintiff on the warehouse's security cameras." (*Id.*). At the conclusion of this outing, Cianflone "caressed Plaintiff's shoulders and attempted to hold Plaintiff's hand." (*Id.* ¶ 65).

- On or around December 19, 2018, Cianflone instructed Plaintiff that she could not work with Essex in the warehouse after 6:00 p.m. (*Id.* ¶ 70). When Plaintiff asked why, Cianflone said "I think he's trying to get in your pants." (*Id.*).

- In 2019, Plaintiff joined Cianflone (at his insistence) for dinner again. (*Id.* ¶ 77). Cianflone informed Plaintiff that her new replacement was not performing well and was going to be terminated; Cianflone then "reached out and started stroking Plaintiff's thigh," and then "leered at Plaintiff as he informed [her] that he wanted her to return to the position of Operations Manager." (*Id.* ¶ 78). Plaintiff attempted to make sure that she would not be getting the job because Cianflone expected anything; Cianflone continued to "lustfully caress Plaintiff's thighs as he assured her that she would be reinstated as Operations Manager." (*Id.* ¶¶ 80–81).

- In or around January 2019, Cianflone groped Plaintiff's breasts again. (*Id.* ¶ 85).

Plaintiff alleges that she complained to three employees about Cianflone's conduct. (*Id.* ¶¶ 72, 81 & 86). First, Plaintiff alleges that she consistently rejected Cianflone's advances; as a result of her direct protests to Cianflone, Plaintiff alleges that in or around October 2018, she was demoted from her position as Operations Manager. (*Id.* ¶¶ 52–56). Second, Plaintiff alleges that

on around December 19, 2018, Plaintiff informed James Essex—Plaintiff's replacement as Operations Manager—that she felt uncomfortable working for Cianflone because he had been sexually harassing her.  (*Id.* ¶ 72).  Essex allegedly informed Plaintiff that it was "obvious" Cianflone had romantic feelings for her based on the way he acted towards her. (*Id.* ¶ 73).  Essex took no further action.  (*Id.* ¶ 74).  Finally, Plaintiff alleges that she sent two different emails to Silvestri complaining about Cianflone's conduct and its effect on her ability to perform her job duties.  (*Id.* ¶¶ 86 & 91).  Plaintiff sent one email on or about January 25, 2019, but Silvestri "failed to take immediate remedial or corrective action to remedy the sexual harassment." (*Id.* ¶¶ 86–88). And shortly thereafter, in February 2019, Cianflone allegedly confronted Plaintiff asking if Plaintiff planned to "ruin him."  (*Id.* ¶ 89).  The harassment continued and, on or about March 15, 2019, Plaintiff sent a second email to Silvestri, again complaining about Cianflone's conduct.  (*Id.* ¶¶ 90–91).  Silvestri never responded to Plaintiff's emails.  (*Id.* ¶ 92).

Following these complaints, Plaintiff alleges that Defendants began a pattern and practice of retaliating against her.  According to the Amended Complaint, in late March 2019, Plaintiff requested sick leave to deal with the depression and anxiety she suffered as a result of Cianflone's conduct; however, Defendants refused to compensate Plaintiff for her sick days.  (*Id.* ¶¶ 95–96). Then, in or around April 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 97).  According to Plaintiff, this complaint triggered additional retaliatory conduct by Defendants—they began selectively disciplining her for lateness, even though other individuals were often late and not disciplined. (*Id.* ¶¶ 99–101).

Based on the retaliatory acts and harassment she experienced, Plaintiff filed suit on October 21, 2019, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

("Title VII") and the New Jersey Law Against Discrimination, N.J. Stat. Ann § 10:5-12 *et seq.* ("NJLAD"). On March 16, 2020, Plaintiff filed the operative, Amended Complaint. Plaintiff alleges claims for (i) hostile work environment under Title VII and NJLAD (Counts I and III); (ii) retaliation under Title VII and NJLAD (Counts II and IV); and (iii) aiding and abetting under NJLAD (Count V). Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the Motion. (D.E. No. 16 ("Pl. Opp. Br.")).

## II.    LEGAL STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.    DISCUSSION

### A.    Title VII Hostile Work Environment Claim (Count I)[2]

To prevail on a hostile work environment claim, a plaintiff must establish that (i) she suffered intentional discrimination because of her sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected the plaintiff; (iv) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (v) the existence of respondeat superior to impose employer liability.  *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).  "The first four elements establish a hostile work environment, and the fifth element determines employer liability."  *Mandel*, 706 F.3d at 167.  Importantly, at this stage of the litigation, Plaintiff's burden "is to sufficiently plead a Title VII-based hostile work environment claim," and "[w]hether the evidence will ultimately show that Plaintiff has established a prima facie claim of sexual harassment is best left for summary judgment or trial."  *Stallone v. Camden Cty. Tech. Sch. Bd. of Educ.*, No. 12-7356, 2013 WL 5178728, at *5 (D.N.J. Sept. 13, 2013).

Relocation Express moves to dismiss Plaintiff's Title VII hostile work environment claim, but its arguments for dismissal are unclear.  Relocation Express argues—without specific reference to relevant law or any particular element of the claim—that (i) Plaintiff's timeline in the Amended Complaint does not comport with her claims; (ii) Relocation Express "took clear and decisive action within less than two months of Plaintiff's initial complaint"; and (iii) "Plaintiff continues to work in the same position as Operations Manager to this day."  (Mov. Br. at 12).  Based on other references in Defendants' briefs, it appears that Relocation Express challenges two elements of Plaintiff's hostile work environment claim: whether the conduct was severe or pervasive and

---

[2]    The Title VII claims (Counts I–II) are not alleged against any individual defendants; thus, the Court evaluates those claims as against Relocation Express only.  (Am. Compl. at 11 (ECF Pagination)).

whether she has alleged facts to support employer liability. (Mov. Br. at 5 ("Plaintiff's harassment claims fail . . . because she cannot cite any continuing severity or pervasive elements of her work environment."); D.E. No. 21 ("Reply Br.") at 5 ("Plaintiff cannot satisfy the respondeat superior liability prong to make out a hostile work environment claim.")). Still, Relocation Express does not connect the necessary dots between its factual arguments and the legal elements of Plaintiff's claim, and it is not the Court's job to make arguments for the parties. In any event, the Court is unpersuaded by even a generous reading of Relocation Express's arguments.

### i. *Severe or Pervasive*

"The 'severe or pervasive' standard requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Moody*, 870 F.3d at 214 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To determine whether an environment is sufficiently hostile or abusive, courts look to the totality of the circumstances and consider factors such as the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)).

As set forth in detail above, Plaintiff alleges that Cianflone verbally and physically sexually harassed her in multiple ways and on numerous occasions throughout the approximate two-year period outlined in the Amended Complaint. (*See* Section I, *supra*). Taken together, Plaintiff's allegations plausibly suggest that Cianflone's conduct was frequent and surpassed what could be perceived as mere offensive utterances. And, according to the Amended Complaint, the conduct actually interfered with Plaintiff's work performance: she requested sick leave to deal with the waves of depression and anxiety she suffered from Cianflone's repeated sexual advances.

(Am. Compl. ¶ 95).  In other words, considering the totality of the circumstances outlined in the Amended Complaint, Plaintiff plausibly alleges severe or pervasive conduct sufficient to survive a motion to dismiss.  *See, e.g.*, *Martone v. Jet Aviation Flight Servs., Inc.*, No. 19-21011, 2021 WL 1608891, at *9 (D.N.J. Apr. 26, 2021) ("At this stage of the litigation, the alleged conduct, taken collectively, appears sufficiently severe and pervasive to alter the conditions of Plaintiff's employment."); *Stallone*, 2013 WL 5178728, at *5 (concluding that a series of inappropriate sexual comments were sufficient to allege pervasiveness at the motion to dismiss stage).

### ii.       Employer Liability

"The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker."  *Mandel*, 706 F.3d at 169.  Where, as here, the alleged harasser is the victim's supervisor, and the harassment occurred outside the scope of employment,[3] agency principles dictate the employer's liability.  *Ellerth*, 524 U.S. at 758. Section 219(2) of the Restatement (Second) of Agency (1957) ("Restatement") sets forth situations in which an employer may be liable for torts committed outside the scope of employment:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> > (a) the master intended the conduct or the consequences, or
> >
> > (b) the master was negligent or reckless, or
> >
> > (c) the conduct violated a non-delegable duty of the master, or
> >
> > (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

*Id.* (quotation marks omitted) (quoting Restatement § 219(2)).  "[I]n the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of

---

[3]       "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998).  Plaintiff does not seem to allege that Cianflone's conduct was within his scope of employment.

managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'"   *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999).

Relocation Express does not elaborate on these principles in arguing that Plaintiff has not alleged employer liability; thus, the Court does not address them in depth.  But based on the allegations in the Amended Complaint, it appears that there are at least two potential avenues for employer liability here: first, based on the potential negligence or recklessness of Relocation Express (based on allegations that it was aware of and failed to timely remedy the harassment); and second, based on a theory that Cianflone was aided by the existence of the agency relation (based on the allegations that Cianflone took a tangible employment action against Plaintiff when he demoted her).  *See Ellerth*, 524 U.S. at 758 (explaining that "beyond question" an employer could be held liable under agency principles for aiding in the commission of harassment "when a supervisor takes a tangible employment action against the subordinate").

Relocation Express's arguments—based on its lack of knowledge of the harassment at the time of the demotion and the actions it took to remedy the situation—are, potentially, arguments against liability for reckless or negligent conduct.  But at the motion to dismiss stage, the Court must accept *Plaintiff's* allegations as true.  Thus, the Court must accept Plaintiff's version of the facts—that Relocation Express knew about Cianflone's harassment (at least at some point during her employment) and failed to remedy the situation.  Relocation Express can challenge the truth of these allegations at a later stage in this litigation.[4]

---

[4]       Alternatively, Relocation Express's arguments are potentially relevant to what has become known as the *Ellerth/Faragher* affirmative defense.  "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, [and] the defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Ellerth* 524, U.S. at 765.  However, the defense is unavailable where, as here, "the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."  *Id.*  On this score, Relocation Express tries to suggest that Plaintiff was not actually demoted from her position as Operations Manager.  (*See* Mov. Br. at 12).  As discussed in Section III.C.i *infra*,

Accordingly, the Court denies Defendants' motion to dismiss Count I.

**B.      NJLAD Hostile Work Environment Claim (Count III)[5]**

Relocation Express moves to dismiss Plaintiff's NJLAD hostile work environment claim based on the same arguments for dismissal of the Title VII claim. (Mov. Br. at 12). The standard for establishing a hostile work environment under the NJLAD is "strikingly similar" to that under Title VII. *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005); *see Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 625 (N.J. 2002). Accordingly, the Court rejects any argument to dismiss the NJLAD claim based on insufficient allegations of severe or pervasive conduct.

Moreover, as with Title VII, under NJLAD, there must be a basis for employer liability. *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 459–60 (N.J. 1993). Under the NJLAD, the standard for employer liability for supervisory sexual harassment depends on the damages and relief sought: an employer is directly and strictly liable for all equitable damages and relief; liability for compensatory damages is governed by the same agency principles outlined *supra*; and an employer can be liable for punitive damages only in the event of actual participation by upper management or willful indifference. *Lehmann*, 626 A.2d at 465; *Aguas v. State*, 107 A.3d 1250, 1260 (N.J. 2015) (quoting Restatement § 219(2)). Additionally, New Jersey has adopted the *Faragher/Ellerth* affirmative defense standard for cases where no tangible employment action was taken. *Aguas*, 107 A.3d at 1269–70.

Again, Relocation Express does not elaborate on these standards to make its argument for dismissal. Therefore, and because the considerations relevant to employer liability under NJLAD

---

Relocation Express's arguments on this point are unpersuasive at the motion to dismiss stage. Regardless, even if the defense is available to Relocation Express, its applicability cannot be determined at this early stage of the litigation.

[5]      This claim is alleged against "all defendants" (Am. Compl. at 12 (ECF pagination)); however, there is no individual liability of a supervisor for creating or maintaining a hostile work environment under the NJLAD. *Cicchetti v. Morris Cty Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008) (quoting N.J. Stat. Ann. § 10:5-12(e)). Thus, the Court addresses this claim against Relocation Express only.

overlap with those relevant to employer liability under Title VII, the Court rejects any argument to avoid employer liability.[6]

### C.        Title VII Retaliation Claim (Count II)

To state a claim for retaliation under Title VII, a plaintiff must plausibly allege that she (i) engaged in protected activity, (ii) was subjected to an adverse employment action, and (iii) the adverse employment action occurred because she engaged in the protected activity. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Plaintiff alleges that she was retaliated against in the following ways: she was (i) demoted after resisting Cianflone's sexual advances; (ii) denied compensation for sick days after complaining to Silvestri and Essex about the harassment; and (iii) selectively disciplined for tardiness and issued warning letters after filing a charge of discrimination with the EEOC.[7]  (Am. Compl. ¶¶ 61, 94, 96 & 98–101).  Relocation Express argues that these facts fall short of alleging that Plaintiff suffered any adverse employment action and/or engaged in protected activity prior to any adverse employment action.  (Mov. Br. at 8–10).  For the following reasons, Relocation Express's arguments are unpersuasive.

---

[6]        Relocation Express makes a one-line argument that "Plaintiff has failed to state any damages connected with the alleged hostile work environment."  (Mov. Br. at 12).  Plaintiff alleges damages throughout her Amended Complaint—she claims to have suffered severe emotional distress, physical ailments, loss of income, the loss of a salary, bonuses, benefits, pension, and other compensation, future pecuniary losses, pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. (*See, e.g.*, Am. Compl. ¶¶ 105 & 108).  Without more specificity, the Court does not entertain Relocation Express's argument on damages.

[7]        In her opposition brief, Plaintiff cites to additional allegations of retaliatory conduct such as Cianflone's instructions that Plaintiff work more hours or on weekends and her allegations of *quid pro quo* harassment. (Pl. Opp. Br. at 11; Am. Compl. ¶¶ 44 & 81–82).  Because Relocation Express focuses on the demotion, denial of sick days, and discipline, the Court focuses on the sufficiency of those allegations.

### i. *October 2018 Demotion*

Plaintiff alleges that on October 30, 2018, she was demoted from her position as Operations Manager after rebuffing Cianflone's repeated sexual advances. (Am. Compl. ¶¶ 52–58). According to Plaintiff, the demotion resulted in a change in pay and reassignment of duties. (*Id.* ¶¶ 54–56). With respect to Plaintiff's demotion, Relocation Express argues that Plaintiff fails to establish that (i) she engaged in protected activity prior to her demotion and (ii) the demotion constituted a materially adverse employment action. (Mov. Br. at 7–8).

As to protected activity, the Court agrees with Plaintiff that her alleged direct protests to Cianflone's advances—which are outlined in the Amended Complaint—qualify as protected activity for pleading purposes. (*See* Pl. Opp. Br. at 10). "[T]here is no hard and fast rule as to whether the conduct in a given case is protected." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). The Third Circuit has "cited with approval" the Second Circuit's language that "Title VII's opposition clause is triggered by formal EEOC proceedings 'as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges." *Id.* (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). And "several district courts in this Circuit, including the District of New Jersey, have . . . determined that rejection of sexual advances constitutes protected activity." *Papp v. MRS BPO LLC*, No. 13-3183, 2015 WL 5247005, at *6 & n.8 (D.N.J. Sept. 9, 2015) (collecting cases).

In Defendants' reply brief, Relocation Express argues that Plaintiff's informal protests to Cianflone are insufficient because she did not protest to Silvestri or to anyone else. (Reply Br. at 3). But that fact is insignificant because Plaintiff alleges that the protests were made to Cianflone,

and that Cianflone—the Vice President and General Manager of Relocation Express who had supervisory authority over Plaintiff—signed the demotion document on behalf of Relocation Express with knowledge of his own conduct.  (Am. Compl. ¶¶ 18, 19 & 55).  The present case is thus distinguishable from the cases Relocation Express cites, which were decided at the summary judgment stage, and in which the principals who were the decision makers were unaware of the plaintiff's complaints of discrimination.  (Reply Br. at 4 (first citing *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010), then citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir. 1999))).  The Court thus rejects Relocation Express's argument that Plaintiff did not engage in protected activity until her January 2019 email to Silvestri.

Relocation Express next argues that there was no materially adverse action regarding Plaintiff's employment status.  Plaintiff alleges that after she rebuffed Cianflone's unwelcomed advances, Cianflone spoke with Silvestri about her work performance.  (Am. Compl. ¶¶ 52–53).  Shortly thereafter, Silvestri contacted her and "instructed Plaintiff to sign a document that stripped Plaintiff of her position as Operations Manager," and informed her that "she would be assigned to a new role with a new (lower) salary."  (*Id.* ¶ 54).  Plaintiff was later given the demotion letter signed by Cianflone on behalf of Relocation Express.  (*Id.* ¶ 55).  According to the Amended Complaint, the letter stated the following:

> "As a result of the new hire, your title will no longer be Operations Manager. The new Operations Manager will be reassigning your duties within the coming weeks. Along with the reassignment of duties your compensation will be modified to reflect the new position."

(*Id.*).

Relocation Express does not challenge whether a demotion, generally speaking, constitutes a materially adverse employment action.  Instead, it argues that no demotion ever occurred.  Specifically, Relocation Express claims that a subsequent letter sent to Plaintiff "clearly addresses

her as the Operations Manager for the warehouse, a position she held at all times." (Mov. Br. at 8). Thus, says Relocation Express, "there was no change in her position whatsoever and therefore no materially adverse action regarding her employment status." (*Id.*). This argument, at best, demonstrates that Plaintiff was still referred to as the Operations Manager in a subsequent letter. However, that fact does not necessarily disprove Plaintiff's allegations—which the court must accept as true—that she was given a new position with new duties and modified compensation following her complaints to Cianflone.

### ii.    Denial of Sick Days

Plaintiff alleges that in or around March 2019, she requested sick leave to deal with the depression and anxiety she suffered as a result of Cianflone's sexual advances. (Am. Compl. ¶ 95). According to the Amended Complaint, by this time, Plaintiff had complained to Silvestri about Cianflone's behavior twice via email in January and March of 2019. (*Id.* ¶¶ 90 & 92).

Relocation Express argues that denial of sick days is not an adverse employment action because it did not alter the terms and conditions of Plaintiff's employment. (Mov. Br. at 9). However, adverse employment actions in the retaliation context are defined more broadly. Because the "discrimination and retaliation provisions of Title VII have different statutory language and different purposes . . . 'the anti-retaliation provision, unlike the [anti-discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Moore*, 461 F.3d at 341 (quoting *Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). Thus, in the retaliation context, an adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington North*, 548 U.S. at 68–69 (internal quotation marks and citation omitted).

Defendants do not make any argument regarding whether the denial of sick days would dissuade a reasonable worker from making or supporting a charge of discrimination. (*See* Mov. Br. at 8–9 & Reply Br. at 5). The Court will not make any such argument for Defendants, and their motion to dismiss on these grounds is denied.[8]

### iii.        *Discipline and Warning Letters*

Finally, Plaintiff alleges that Relocation Express issued written warnings and disciplined her for tardiness after she filed her charge of discrimination with the EEOC. Relocation Express argues that (i) the warning letters imposed "no actual discipline" or "actual consequences" that would affect Plaintiff's compensation, conditions of employment, or any other issue; and (ii) Plaintiff was disciplined for her "lateness and other performance issues," not in retaliation for her EEOC charge. (Mov. Br. at 9–10 (citing Am. Compl. ¶ 101)).

Relocation Express's first argument, again, is premised on the incorrect standard for determining what constitutes a materially adverse employment action. Without further elaboration by Relocation Express on whether the discipline and warnings would dissuade a reasonable worker from making or supporting a charge of discrimination, the Court declines to consider this argument.[9]

---

[8]        Under the correct standard, it seems at least plausible that denial of sick days after complaints of sexual harassment—particularly where the sick days were requested to deal with anxiety and depression that resulted from the sexual harassment—could dissuade a reasonable worker from making or supporting a charge of discrimination. *See Harley v. Paulson*, No. 07-3559, 2008 WL 5189931, at *4 (D.N.J. Dec. 9, 2008) ("Taken together, these bare facts, consistent with our notice pleading standard, are sufficient to place [d]efendant on notice of the basis for [p]laintiff's retaliation claim and to suggest that the circumstances of these actions might lead a reasonable person to refrain from bringing a complaint."). As Defendants point out, whether Plaintiff actually was entitled to sick days at the time of her request may be relevant to the question whether a reasonable worker might be dissuaded from making or supporting a charge of discrimination based on the denial of sick days; it may also be relevant to the issue of causation. (Mov. Br. at 9). These issues can be explored at a later stage of the litigation.

[9]        Again, under the correct standard and without any argument to the contrary, it seems plausible that the warning letters could have dissuaded a reasonable worker from making or supporting a charge of discrimination. Plaintiff alleges that she was warned and/or disciplined three times for lateness—one warning occurred on the very same day she filed her EEOC charge and another warning culminated with threatened termination. (Am. Compl. ¶¶ 99–100; *see also* D.E. No. 13-2, Exhibit A to Motion). She also alleges that she was selectively disciplined for

Relocation Express's second argument—through which it proffers a non-discriminatory reason for disciplining Plaintiff—is unpersuasive at the motion to dismiss stage.   Relocation Express argues that Plaintiff was disciplined for her "lateness and other performance issues" and not in retaliation for her EEOC charge.  (Mov. Br. at 9).  But this argument does not bear on the question whether Plaintiff has plausibly alleged her claim and is inappropriate for resolution at the motion to dismiss stage.  *See Connelly*, 809 F.3d at 793 ("Even if one believed it unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits, it must be said that [plaintiff]—under a favorable standard of review—has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims.") (internal quotations and citation omitted).

### D.    NJLAD Retaliation Claim (Count IV)[10]

Defendants move to dismiss Plaintiff's NJLAD retaliation claim because "[t]he NJLAD contemplates the same standard for retaliatory action as the federal courts," and "the Amended

---

lateness, explaining that "the warehouse manager was late 30 minutes or more each day and was not disciplined." (Am. Compl. ¶ 100).  Considering when the warnings allegedly occurred, the purportedly selective enforcement of the lateness policy, and the ultimate risk of termination, it is plausible that a reasonable worker would be dissuaded from making or supporting a charge of discrimination.  *See Rivers v. Potter*, No. 05-4868, 2007 WL 4440880, at *9 (D.N.J. Dec. 18, 2007) (concluding that a letter of warning might dissuade a reasonable worker from engaging in future protected action because of the potential effects of the letter—particularly, the fact that it could increase the penalty for subsequent infractions); *Spence v. New Jersey*, No. 19-21490, 2021 WL 1345872, at *10 (D.N.J. Apr. 12, 2021) ("Plaintiff has sufficiently raised a reasonable expectation that she will be able to demonstrate an adverse employment action after discovery.").  Whether Relocation Express can ultimately demonstrate that the warnings were issued for non-discriminatory reasons, as suggested in its moving brief, is an issue that is more appropriately explored at a later stage in the litigation.

[10]      This claim is alleged against "all Defendants."  Unlike the hostile work environment provision in the NJLAD, which refers to conduct by "employers," the retaliation provision refers to conduct by "any person."  *Compare* N.J. Stat. Ann. § 10:5-12(a), *with id.* § 10:5-12(d).  Some Judges in this District have relied on *Cicchetti* (a case which did not involve a retaliation claim) to hold that there can be no individual liability of a supervisor for retaliation.  *See Cicchetti*, 947 A.2d at 645 ("[I]ndividual liability of a supervisor **for acts of discrimination** or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person.'") (emphasis added); *see also Wicker v. Bloomfield Disc.*, LLC, No. 19-19053, 2020 WL 5229388, at *3 (D.N.J. Sept. 2, 2020) (relying on *Cicchetti* and dismissing retaliation claim because "individual liability cannot be imposed for such types of claims under NJLAD").  However, another Judge in this District recently suggested that it is an "open question" whether a plaintiff may assert a claim for retaliation under the NJLAD against a supervisor.  *See Berdzik v. Physicians Endoscopy, LLC*, No. 20-11656, 2021 WL 3260857, at *11 & n.15 (D.N.J. July 30, 2021).

Complaint does not provide any facts to support the allegations classified as retaliatory under the law." (Mov. Br. at 10–11).  However, as set forth above, Defendants rely on the incorrect standard under federal law.  And the New Jersey Supreme Court has adopted that same standard for determining whether acts are materially adverse for retaliation purposes under the NJLAD.  *Roa v. Roa*, 985 A.2d 1225, 1236 (N.J. 2010) (taking lead from the United States Supreme Court's decision in *Burlington North* and explaining that a plaintiff must show that the challenged action is materially adverse—meaning it might have dissuaded a reasonable worker from making or supporting a charge of discrimination).  Accordingly, Defendants' only argument for dismissal of the NJLAD retaliation claim is unpersuasive.

### E.    NJLAD Aiding and Abetting Claim (Count V)

Defendants raise two challenges to Plaintiff's NJLAD aiding and abetting claim: first, Defendants argue that Relocation Express cannot be held liable because it is an entity, not an individual.  However, as another judge in this District has explained, the plain language of the NJLAD contemplates liability for corporate entities:

> The NJLAD states in pertinent part that it shall be unlawful "for *any person*, whether an employer or not, to aid, abet, incite, compel or coerce the doing any of the acts forbidden under this act, or to attempt to do so." N.J. Stat. Ann. § 10:5-12(e). The NJLAD defines "person" to include "one or more individuals, partnerships, associations, organizations, labor organizations, *corporations*, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." *Id.* § 10:5-5(a).

*Andre v. Trinity Health Corp.*, No. 18-3183, 2019 WL 1198959, at *5 (D.N.J. Mar. 14, 2019).  In other words, any argument that aiding and abetting liability is limited to individuals "is contrary to the language of § 10:5-12(e) of the NJLAD," *id.*, and Defendants provide no authority

---

However, because the parties did not brief this issue, the Court does not address it further.  Instead, the Court focuses its analysis on Defendants' particular argument for dismissal of the retaliation claim, which is not defendant-specific.

suggesting otherwise.  *See also id.* at 6 (collecting cases for the proposition that corporate defendants may be potentially liable under § 10:5-12(e)).[11]

Second, Defendants argue that the factual allegations against Silvestri are insufficiently pled.  (Mov. Br. at 6–7).  The NJLAD imposes "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment . . . through the 'aiding and abetting' mechanism that applies to 'any person.'"  *See Cicchetti*, 947 A.2d at 645 (quoting § 10:5-12(e)).  In relevant part, § 10:5-12(e) prohibits any person from "aid[ing], abet[ting], incit[ing], compel[ling], or coerc[ing] the doing of any of the acts forbidden under this act."  N.J. Stat. Ann. § 10:5-12(e).  To succeed on an aiding and abetting claim, a plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."  *See Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004).  "[I]naction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement."  *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999).  The Third Circuit and the New Jersey Supreme Court have applied five factors from the Restatement (Second) of Torts to assess whether a defendant provides "substantial assistance" to the principal violator:

> (1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor.

---

[11]     As an alternative to their argument about entity liability, Defendants argue that the aiding and abetting claim fails against Relocation Express because Plaintiff cannot prove that any of the alleged discriminatory or retaliatory actions took place.  (Mov. Br. at 7 n.3).  Whether or not Plaintiff can "prove" any of the discriminatory or retaliatory actions is irrelevant at this stage in the litigation; because the Court has found that such actions are adequately *pled*, Defendants' alternative argument fails.

*Tarr*, 853 A.2d at 929 (first citing Restatement (Second) of Torts, § 876(b) comment d; then citing *Hurley*, 174 F.3d at 127 n.27).

Here, Plaintiff alleges that Silvestri aided and abetted Cianflone's conduct by failing to take corrective action against Cianflone and by participating in the retaliatory acts taken against her. (Pl. Opp. Br. at 8 (citing Am. Comp. ¶ 54)). Defendants argue that Silvestri cannot be held liable for mere inaction, even if he knew of the alleged harassment, absent affirmative assistance. (Mov. Br. at 6). And according to Defendants, Silvestri provided no such affirmative assistance here. (*Id.* at 6–7).

With respect to inaction, the Court agrees with Defendants that failure to act, standing alone, is insufficient. The New Jersey Supreme Court has explained that "active and purposeful conduct" is required to hold supervisors individually liable. *Cicchetti*, 947 A.2d at 646 (quoting *Tarr*, 853 A.2d at 929). In the context of inaction by a supervisor, the Third Circuit has explained the aiding and abetting theory of liability in this manner:

> A supervisor, under New Jersey law, has a duty to act against harassment. *See Taylor v. Metzger*, 706 A.2d 685, 691 (N.J. 1998). This duty can be violated by **deliberate indifference or affirmatively harassing acts**. When a supervisor flouts this duty, he subjects himself and his employer to liability.

*Hurley*, 174 F.3d at 126 (emphasis added).

Here, Plaintiff alleges more than mere inaction. Plaintiff alleges that she emailed Silvestri twice to complain about Cianflone in January and March of 2019. (Am. Compl. ¶¶ 86 & 91). Plaintiff received no response to her emails, and she alleges that because Silvestri failed to take any remedial or corrective action, the harassment continued. (*Id.* ¶¶ 88–90 & 92). Moreover, Plaintiff alleges that after her complaints to Silvestri, Defendants retaliated against her by failing to pay her for the sick days she requested to deal with the depression and anxiety she suffered and

19

by selectively disciplining her for lateness. (*Id.* ¶¶ 95–101). Importantly, Plaintiff alleges that Silvestri participated in these retaliatory acts. (*Id.* ¶ 101).[12] Construing these allegations in the light most favorable to Plaintiff, it is plausible that Silvestri's inaction amounted to deliberate indifference and/or an affirmative act based on a combination of his complete failure to respond to Plaintiff's complaints and his alleged participation in retaliatory acts.[13] *Hurley*, 174 F.3d at 128 (concluding that "knowing inaction by a high-level employee with responsibility over [plaintiff] and her harassers could . . . rise to the level of substantial assistance"); *see also E.E.O.C. v. Foodcrafters Distribution Co.*, No. 03-2796, 2006 WL 489718, at *7 (D.N.J. Feb. 24, 2006) (aiding and abetting claim survived summary judgment where there was evidence that plaintiff's supervisor knew of the harassment, was unresponsive to plaintiff's complaints, and participated in the abusive conduct); *Ivan v. Cty. of Middlesex*, 612 F. Supp. 2d 546, 553 (D.N.J. 2009) (deciding, on summary judgment, that "a reasonable jury could find [supervisor] liable for aiding and abetting because he was willful in failing to act in response to [plaintiff's] complaints regarding her fellow officers"). While Plaintiff may or may not ultimately succeed on this claim, at the motion to dismiss stage, Plaintiff's allegations suffice. *Bubbles N' Bows, LLC v. Fey Pub. Co.*, No. 06-5391, 2007 WL 2406980, at *8 (D.N.J. Aug. 20, 2007) ("While [defendant's] liability hinges on whether he affirmatively aided Fey Publishing in carrying out its discriminatory actions

---

[12]     The Court does, however, agree with Defendants that there are insufficient allegations pertaining to Silvestri's knowledge of Cianflone's conduct *prior to* Plaintiff's demotion to plausibly suggest that Silvestri aided and abetted Cianflone in connection with the October 2018 demotion. Plaintiff alleges that after Plaintiff rebuffed Cianflone's advances, Cianflone spoke with Silvestri about Plaintiff's "work performance," and shortly thereafter, she was demoted. (Am. Compl. ¶¶ 53–54). Accepting these allegations as true, Cianflone's pre-demotion conversation with Silvestri was about Plaintiff's work performance; Plaintiff does not allege that Cianflone discussed his conduct or any other matters concerning Plaintiff with Silvestri. The Amended Complaint is void of any other allegations suggesting Silvestri knew about Cianflone's alleged conduct prior to her demotion. Nevertheless, as discussed *infra*, Plaintiff plausibly alleges Silvestri's involvement in other, subsequent retaliatory acts.

[13]     Defendants argue that Plaintiff's allegations are insufficient because there are no allegations that Silvestri shared the same intent as Cianflone. (Mov. Br. at 6–7). But "[t]here is no requirement of 'shared intent' between the primary wrongdoer and abettor." *Hurley*, 174 F.3d at 127; *see also Tarr*, 852 A.2d at 929.

or merely had some role, knowledge or involvement in the alleged actions, for the purposes of a motion to dismiss, [p]laintiff need not prove nor offer evidence in support of its allegations.").

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED.  An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**